Timothy M. Bechtold
Bechtold Law Firm, PLLC
PO Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

John Heenan
Heenan & Cook, PLLC
1631 Zimmerman Trail
Billings, MT 59102
406-839-9091
john@lawmontana.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ERIC MELSON, JONATHAN DOWD, ROBERT LEAKE, and MICHAEL GAUNDER, individually and on behalf of all others similarly situated, | ) CV-20-42-M-DLC ) ) ) **FIRST AMENDED COMPLAINT AND** |
| Plaintiffs, | ) **JURY DEMAND** ) ) |
| vs. | ) ) |
| FCA US LLC, and VOLKSWAGEN GROUP OF AMERICA, INC. | ) ) ) |
| Defendants. | ) |

Plaintiffs allege as follows:

1.  Defendant FCA US LLC ("Fiat Chrysler" or "Chrysler") is the manufacturer of 3.6 liter V-6 Pentastar engines, which is the standard engine in several of Chrysler's vehicles, including the Jeep Wrangler and Promaster van.

2.  Defendant Volkswagen Group of America (VW) installed the Pentastar 3.6 liter engine in models of its vehicles sold in the United States, including the Routan.

3.  This action concerns Chrysler's and VW's refusal to honor their warranties and cover the cost of repairing a design and manufacturing defect in the Pentastar engines in Chrysler's and VW's models in model years 2011-2018 (collectively, "Class Vehicles").

4.  Chrysler's design for the Pentastar engine caused excessive wear on the left side cylinder head (the "Design and Manufacturing Defects"). The wear on the cylinder head caused the left cylinder heads to fail (the "Affected Components"). *See* Exhibits 1 & 2.

5.  Chrysler and VW knew or should have known about the Design and Manufacturing Defects from presale testing of the class vehicles before the sale of the first Class Vehicle. Regardless, hundreds of publicly-available consumer complaints, as well as Chrysler's and VW's own customer

complaint records, gave Chrysler and VW notice of the pervasiveness of the Design and Manufacturing Defects and Affected Components as early as 2011. *See* Exhibit 1 & 2.

6.      Chrysler and VW did not disclose the Design and Manufacturing Defects to past purchasers of class vehicles, even when customers brought their Class Vehicles into dealerships for repair of the Design and Manufacturing Defects, and Chrysler and VW continued to sell Class Vehicles to consumers without disclosing the Design and Manufacturing Defects.

7.      Every class vehicle was sold or leased pursuant to express and implied warranties, including a Powertrain Limited Warranty that covers the cost of all parts and labor needed to repair a powertrain component, including the engine, that is defective in workmanship and materials within five years or 100,000 miles, whichever occurs first, calculated from the start date of the Basic Limited Warranty. The Basic Limited Warranty begins on the date a purchaser takes delivery of the vehicle or the date when the vehicle was first put into service, whichever is earlier.

8.      Plaintiffs Eric Melson, Robert Leake, Michael Gaunder, Jonathan Dowd and other Class Vehicle owners and lessees similarly situated (the "Class" or

"Class Members") requested that Chrysler and VW repair the Design and Manufacturing Defects, but Chrysler and VW refused to cover the costs of labor and repair. Instead, Chrysler and VW informed Plaintiffs and the Class Members either that the warranty did not cover the repair because the problem was created by "external factors" or owner "misuse" or that the warranty period had elapsed.

9. Plaintiffs bring claims under breach of express warranty, breach of implied warranties, breach of the Magnusson Moss Warranty Act, negligence, and breach of the Montana Unfair Trade Practices and Consumer Protection Act. Plaintiffs and the Class seek to recover damages they incurred as a result of Chrysler's and VW's failure to inform Plaintiffs and the Class about the Design and Manufacturing Defects and Chrysler's and VW's failure to repair or replace the engine components damaged as a result of the Design and Manufacturing Defects. Moreover, Plaintiffs and the Class also seek a declaration that the Design and Manufacturing Defects should be covered under the Powertrain Warranty and an extension of the Basic Limited Warranty to cover repair of the Affected Components damaged as a result of the Design and Manufacturing Defects. Plaintiffs also request an

injunction ordering Chrysler and VW to inform purchasers of the Class

Vehicles of the Design and Manufacturing Defects. Plaintiffs seek attorney's

fees and costs, pre- and post-judgment interest, and all other remedies and

relief permitted by law.

## JURISDICTION AND VENUE

10.    Jurisdiction is proper in this Court because Plaintiffs seek damages,

restitution, and injunctive relief for a nationwide class or subclass of persons

which, because of the amounts involved and the value of the request for

damages and injunctive relief, implicates the Class Action Fairness Act, 28

U.S.C. §§ 1332(d), 1453, and 1711–1715.

11.    The United States District Court for the District of Montana also has original

subject matter jurisdiction over the Magnuson-Moss Warranty Act claim,

15 U.S.C. §2301, pursuant to 28 U.S.C. §1331.

12.    The United States District Court for the District of Montana can exercise

supplemental jurisdiction over the Class members' state law claims under

28 U.S.C. §1367.

13.    Venue is proper in the United States District Court for the District of Montana

pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because Plaintiff Eric Melson

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

resides in this District. Chrysler's and VW's contacts with this District are sufficient to subject them to personal jurisdiction since at all relevant times they had regular and systematic contacts with the State of Montana, in which they do business and place vehicle models with Pentastar engines in the stream of commerce.

14.   Venue is proper in this division because Plaintiff Eric Melson resides in this division.

**PARTIES**

15.   Plaintiff Eric Melson is a Montana resident and citizen of the State of Montana who purchased and now owns a Chrysler Promaster Van with the 3.6 liter V-6 Pentastar engine that had the Design and Manufacturing Defects.

16.   Plaintiff Jonathan Dowd is a North Carolina resident and citizen of the State of North Carolina who purchased and now owns a VW Routan van with the 3.6 liter V-6 Pentastar engine that had the Design and Manufacturing Defects.

17.   Plaintiff Robert Leake is a New York resident and citizen of the State of New York who purchased a and now owns a 2016 Chrysler 200 with the 3.6 liter

Pentastar engine that had the Design and Manufacturing Defects.

18.    Plaintiff Michael Gaunder is an Oklahoma resident and a citizen of the State of Oklahoma who purchased and now owns a 2016 Dodge Durango with the 3.6 liter Pentastar engine that had the Design and Manufacturing Defects.

19.    Defendant FCA US LLC is a Delaware limited liability company with its principal place of business located in Auburn Hills, Michigan.

20.    Defendant Volkswagen Group of America, Inc. is a New Jersey corporation with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.

**THE DEFECT**

21.    Chrysler designed and manufactured the 3.6 liter V-6 Pentastar engine for placement into certain Chrysler model vehicles, including vans, SUVs, and sedans, from 2011-2017.

22.    VW placed the 3.6 liter V-6 Pentastar engine into certain VW model vehicles, including the Routan Van, from 2011-2013.

23.    Due to the Design and Manufacturing Defect, the left cylinder heads on many of the Pentastar engines failed after normal driving resulted in

excessive wear on the left cylinder heads. *See* Exhibits 1 & 2.

24. Chrysler and VW were aware of the Design and Manufacturing Defects in 2012 when thousands of customers complained that their new vehicles were exhibiting a ticking sound and illuminating a check engine light. *See* Exhibits 1 & 2.

25. Customers filed numerous complaints both with Chrysler and with the National Highway Traffic Safety Administration. *See* Exhibits 1 & 2.

26. Chrysler extended its warranty to ten years or 150,000 miles for its customers whose vehicles with Pentastar engines developed the ticking caused by excessive wear of the left cylinder heads. *See* Exhibits 1, 2, & 4.

27. Under the extended warranty, Chrysler customers with the Pentastar tick could replace the left cylinder head with a new part with a design modification. *See* Exhibits 1 & 2.

28. Chrysler claims it made the design modification for the left cylinder head in August 2012. *See* Exhibits 1 & 2.

29. In August 2012, Doug Betts, Chrysler senior vice president for quality, acknowledged that more problem cylinder heads could surface in the future. *See* Exhibits 1 & 2.

30. Despite assurances from Chrysler that its design modifications adequately addressed the cylinder head issues on the 3.6 Pentastar engine, vehicles purchased by Plaintiffs and Class Members in 2012 and subsequent years continued to develop the engine tick. *See* Exhibit 3.

31. The Pentastar 3.6 liter engine's Design and Manufacturing Defect renders the engine not fit for the ordinary purposes for which engines are used, and fails to satisfy a minimum level of quality.

32. As Plaintiffs' experiences attest, the vehicles with the Pentastar 3.6 liter engine are not fit for safe driving and reliable transportation.

**PLAINTIFFS' EXPERIENCES**

33. On November 30, 2016, Plaintiff Eric Melson purchased a used 2014 Ram Promaster 1500 van for personal use from Lanard & Axilund, LLC, a business in Philadelphia, Pennsylvania. Upon pick up date, the vehicle had 40,258 miles.

34. Plaintiff Melson drove the van to his residence in Montana with no issues.

35. In the spring of 2019, a noticeable ticking noise began emanating from the engine.

36. In August, 2019, Plaintiff Melson's van developed a significant oil and

coolant leak that was discovered by the local Chrysler dealership, Lithia

Dodge of Missoula. Lithia Dodge found the oil leak was coming from the oil

filter housing unit and needed to be replaced. On August 21, 2019, Plaintiff

Melson had the service performed at an independent repair shop, Romer's

Point S in Missoula, Montana.

37.    On October 7, 2019, an oil change technician at Romer's Point S noted a

"weird clicking noise" and suggested that Plaintiff Melson have an engine

repair shop take a deeper look.

38.    On November 4, 2019, Plaintiff Melson took his van to Clunker Auto, LLC, in

Missoula, Montana.

39.    Technicians at Clunker Auto immediately recognized the loud ticking noise

made by the Plaintiff Melson's vehicle's engine as the familiar "Pentastar

Tick," and directed Plaintiff Melson to take his van to the Chrysler

dealership because the repair would be covered under an extended

warranty specific to this very issue.

40.    On November 13, 2019, Plaintiff Melson took his van to the Chrysler

dealership in Missoula, Lithia Dodge.

41.    After technicians evaluated Plaintiff Melson's van, Chad Minckler at Lithia

Dodge called Plaintiff Melson and informed him that his van's problem was the "Pentastar Tick."

42. The Lithia Dodge technician noted  "engine code P0306 (cylinder misfire #6) in PCM. monitored the misfire and found #6 misfire coming up consistently but not enough to set an active code yet."

43. Lithia Dodge technicians performed a leak down test on cylinder #6 and found the exhaust valve was leaking and recommended replacing the entire left side cylinder head, gasket, cams, lifters and rockers for a repair cost of $3,930.

44. Chad Minckler informed Plaintiff Melson that the vehicle was not eligible for the extended warranty to fix the Pentastar tick because Plaintiff Melson's vehicle's VIN for my vehicle was not listed on the X56 Warranty chart, therefore Chrysler would not pay for the needed repair to Plaintiff Melson's vehicle under the extended warranty.

45. Plaintiff Melson called Chrysler's Customer Care number and filed a complaint, #68094474. Several Chrysler customer care representatives informed Plaintiff Melson that his vehicle was not on the extended warranty list and that Chrysler would offer no additional support for his

problem.

46. Fearing that the engine would fail due the cylinder head issues, Plaintiff Melson had his vehicle repaired at Clunker Auto on November 8, 2019 for $2229.61.

47. Plaintiff Melson's van was manufactured in October, 2013 in Coahuila, Mexico.

48. The faulty left cylinder head that produced the Pentastar tick was an issue known to Chrysler.

49. Based on information and belief, the serial numbers of the Affected Components in Plaintiff Melson's van are the same as in the vehicles that Chrysler covered in its extended warranty for vehicles with the defective left cylinder head that caused the Pentastar tick.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





50.  Plaintiff Dowd purchased a 2012 VW Routan van in June 2017 from Hendrick Used Vehicles of Cary, North Carolina. In the winter of 2018 a check engine light illuminated, and investigation revealed a misfire in cylinder 2.

51.    The Routan failed North Carolina's vehicle emissions inspection due to the misfire in cylinder 2.

52.    Plaintiff Dowd contacted both VW and Chrysler about the Pentastar engine issues, but neither VW nor Chrysler would assume responsibility for the issues with the Pentastar 3.6 liter engine.

53.    Based on information and belief, the serial numbers of the Affected Components in Plaintiff Dowd's van are the same as in the vehicles that Chrysler covered in its extended warranty for vehicles with the defective left cylinder head that caused the Pentastar tick.

54.    Due the issues in the Pentastar engine, Plaintiff Dowd cannot depend on the safety or reliability of his Routan and has parked the vehicle until it can be repaired.



55. Plaintiff Leake purchased a 2016 Chrysler 200 on March 21, 2016 from Merrick Dodge Chrysler Jeep in Wantagh, NY.

56. In May of 2020, when the odometer on the Chrysler 200 was at about 62,000 miles, Plaintiff Leake began noticing a ticking sound in his engine.

57. Plaintiff Leake contacted Chrysler and was informed that repairs to his vehicle's engine tick would not be covered under the warranties.

58. Because it the engine was neither safe nor reliable with the tick defect,

Plaintiff Leake had the engine repaired so that he could continue to drive the vehicle.

59.    On July 1, 2020, Banner Auto Repair in Bellmore, NY repaired the tick in Plaintiff Leake's engine at a cost of $2737.64.

60.    Plaintiff Gaunder purchased a 2016 Dodge Durango on August 12, 2016 from Fowler Dodge in Oklahoma City, OK.

61.    Early in 2020, when the odometer on the Durango was at about 140,000 miles, Plaintiff Gaunder and his spouse began noticing a ticking sound emanating from the Durango's engine.

62.    Plaintiff Gaunder contacted Chrysler and was informed that repairs to fix the engine tick would not be covered under the warranties for the vehicle.

63.    Plaintiff Gaunder and his spouse fear that the engine will fail suddenly and leave them stranded.

64.    Plaintiff Gaunder's Durango now has about 147,000 miles on its odometer, and it has been parked until it can be repaired.

**CLASS ALLEGATIONS**

65.   At the time of Plaintiffs' and Class members' purchases of Class Vehicles,

Chrysler and VW failed to disclose the consumer complaints, malfunctions,

safety hazards, and material facts related to the Class Vehicles' Design and

Manufacturing Defects and the Affected Components, including the defects

in the materials, workmanship, and factory preparation of the Class

Vehicles.

66.   Before Plaintiffs' and Class Members' purchases of Class Vehicles, Plaintiffs

and Class Members were not informed of or made aware of the Class

Vehicles' Design and Manufacturing Defects and the Affected Components.

67.   Chrysler and VW were in a superior position to know the facts surrounding

the Class Vehicles' Design and Manufacturing Defects and the Affected

Components, and to know that they are latent and not easily discoverable.

68.   Chrysler and VW deliberately concealed the Class Vehicles' Design and

Manufacturing Defects and the Affected Components with the intent of

preventing owners and lessees from seeking relief before the expiration of

their express warranties.

69.   Chrysler and VW had a continuing duty to consumers to disclose the facts

that it knew about the Class Vehicles' Design and Manufacturing Defects and the Affected Components and the potential safety hazards, regardless of the presence of any applicable warranty.

70.    If Chrysler and VW had disclosed the Class Vehicles' Design and Manufacturing Defects and the Affected Components, Plaintiffs and Class Members would not have purchased the Class Vehicles or would have paid significantly less for them. Plaintiffs and Class Members were denied information material to their purchase and willingness to use the Class Vehicles.

71.    Due to the Class Vehicles' Design and Manufacturing Defects and the Affected Components, the value of the Class Vehicles at the time of purchase or lease was less than the amounts Class Members paid.

72.    The Class Vehicles' Design and Manufacturing Defects and the Affected Components cause the Class Vehicles to lose value, including trade-in and re-sale value.

73.    The Class Vehicles' Design and Manufacturing Defects and the Affected Components cause Class Members to face repair costs, to lose use and enjoyment of their Class Vehicles, and to suffer a loss of time and suffering

the burden of arranging and obtaining repairs.

**PROPOSED CLASS**

74.    Plaintiffs bring this case as a class action under FRCP23(b)(2) and/or

23(b)(3) on behalf of the following Classes:

Class 1
All persons in the United States who purchased or leased a 2012-2018
Chrysler vehicle with a 3.6 liter V-6 Pentastar engine who were excluded
from Chrysler's extended warranty of 10 years or 150,000 miles for repairs
on the left cylinder head.

Class 2
All persons in the United States who purchased or leased a 2011-2013 VW
vehicle with a 3.6 liter V-6 Pentastar engine.

75.    Plaintiff Melson also brings this case on behalf of the following Subclass:

All persons in Montana who purchased or leased a 2012-2018 Chrysler
vehicle with a 3.6 liter V-6 Pentastar engine who were excluded from
Chrysler's extended warranty of 10 years or 150,000 miles for repairs on
the left cylinder head.

**CLASS CERTIFICATION ALLEGATIONS**

76.    Numerosity. Class 1 is comprised of hundreds or thousands of Chrysler

vehicle owners throughout the United States and Montana, making joinder

impossible.

Class 2 is comprised of hundreds or thousands of VW vehicle owners

throughout the United States and Montana, making joinder impossible.

77. Commonality. Questions of law and fact exist that are common to all Class

and Subclass Members, and predominate over any questions that affect

only individual Class and Subclass members, including, inter alia:

a. Whether Class Vehicles suffer from the Design and Manufacturing

Defects and the Affected Components;

b. Whether the Design and Manufacturing Defects and the Affected

Components existed at the time the Class Vehicles entered the stream

of commerce;

c. Whether Chrysler and VW knew or should have known about the Design

and Manufacturing Defects and the Affected Components;

d. Whether Chrysler and VW failed to disclose Design and Manufacturing

Defects and the Affected Components it was aware of at the time Class

members purchased the Class Vehicles or thereafter;

e. Whether Chrysler and VW breached their express warranties by failing

to permanently repair or refusing to repair the Design and

Manufacturing Defects and the Affected Components for Class

Members;

    f.   Whether Chrysler and VW acted or refused to act on grounds generally applicable to the Classes, thereby making the award of equitable relief appropriate to the Classes as a whole;

    g.   Whether Chrysler's and VW's conduct violates federal law pursuant to the Magnuson-Moss Warranty Act;

    h.   Whether the Design and Manufacturing Defects and the Affected Components diminish the value of the Class Vehicles;

    i.   Whether Chrysler's and VW's failures to disclose the Design and Manufacturing Defects and the Affected Components constitutes an unfair or deceptive business practice in violation of the Montana Unfair Trade Practices and Consumer Protection Act.

78.   Typicality. Plaintiffs' claims are typical of claims of Class Members.

79.   Adequacy. Plaintiffs Melson, Gaunder, and Leake are adequate representatives of the proposed Class 1 and Subclass because their interests do not conflict with the interests of the members of the Class and Subclass they seek to represent. Plaintiff Dowd is an adequate representative of the proposed Class 2 because his interests do not conflict

with the interests of the members of the Class he seeks to represent.

Plaintiffs retained counsel who are competent and experienced in complex

class action litigation, and prosecute vigorously on behalf of Class

Members.

80.    Superiority. A class action is superior to other available means for the fair

and efficient adjudication of this dispute. The injury suffered by each Class

and Subclass Member, while meaningful on an individual basis, is not of

such magnitude to make the prosecution of individual actions against

Chrysler and VW economically feasible. Even if Class and Subclass Members

themselves could afford individualized litigation, the court system could

not. In addition to the burden and expense of managing many actions

arising from the Design and Manufacturing Defects and the Affected

Components, individualized litigation increases the delay and expense to all

parties and the court system presented by the legal and factual issues of

the case. By contrast, a class action presents far fewer management

difficulties and provides the benefits of single adjudication, economy of

scale, and comprehensive supervision by a single court.

81.    In the alternative, the proposed Classes and Subclass may be certified

because:

a.  The prosecution of separate actions by the individual members of the proposed Classes and Subclass would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Chrysler and VW;

b.  The prosecution of individual actions could result in adjudications that, as a practical matter, would be dispositive of interests of non-party Class Members, or that would substantially impair their ability to protect their interests; and

c.  Chrysler and VW acted or refused to act on grounds generally applicable to the proposed Classes and Subclass, thereby making appropriate final and injunctive relief with respect to members of the proposed Classes and Subclass as a whole.

82.  Predominance. This class action is appropriate for certification because questions of law and fact common to Class Members and Subclass Members predominate over questions affecting only individual members.

83.  Class-wide injunctive, declaratory, or equitable relief is appropriate.

**TOLLING OF STATUTES OF LIMITATIONS**

84.    Active Concealment Tolling. Any statutes of limitations are tolled by

Chrysler's and VW's knowing and active omission and concealment of the

Design and Manufacturing Defects and the Affected Components at the

point of sale, and Chrysler's and VW's active concealment of the Design and

Manufacturing Defects and the Affected Components after the point of sale

and prior to the expiration of the express warranties. Chrysler and VW had

a duty to disclose the Design and Manufacturing Defects and the Affected

Components  and the related safety risks to Plaintiffs and Class and

Subclass Members because Chrysler and VW had superior knowledge of the

Design and Manufacturing Defects and the Affected Components, and

these Design and Manufacturing Defects and the Affected Components

were neither known to, nor easily discoverable by, Plaintiffs and all Class

and Subclass Members.

85.    Despite their affirmative duty to disclose the nature and existence of the

Design and Manufacturing Defects and the Affected Components, Chrysler

and VW kept Plaintiffs and Class and Subclass Members ignorant of vital

information essential to the pursuant of their claims, without any fault of

lack of diligence on the part of Plaintiffs and Class and Subclass Members.

86. The details of Chrysler's and VW's efforts to conceal its above-described unlawful conduct are in their possession, custody, and control, to the exclusion of Plaintiffs and Class and Subclass Members.

87. Estoppel. Chrysler and VW were and are under a continuing duty to disclose to Plaintiffs and Class and Subclass Members the true character, quality, and nature of the Design and Manufacturing Defects and the Affected Components. At all relevant times, and continuing to this day, Chrysler and VW knowingly, affirmatively, and actively misrepresented and omitted the true character, quality, and nature of the problems cause by the Design and Manufacturing Defects and the Affected Components. The details of Chrysler's and VW's knowledge and omissions are in their possession, custody, and control, to the exclusion of Plaintiffs and Class Members. Plaintiffs and Class Members reasonably relied on Chrysler's and VW's knowing and/or omissions. Based on the foregoing, Chrysler and VW are estopped from relying on any statutes of limitation in defense of this action.

88. Equitable Tolling. Chrysler and VW took active steps to conceal the fact that

they wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Class Vehicles with the Design and Manufacturing Defects and the Affected Components. The details of Chrysler's and VW's efforts to conceal the Design and Manufacturing Defects and the Affected Components are in their possession, custody, and control, to the exclusion of Plaintiffs and Class Members.

89. Chrysler's and VW's failures to disclose and their active concealment of the Design and Manufacturing Defects and the Affected Components amounts to bad faith and deception in and of itself.

90. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Should it be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

91. Given Chrysler's and VW's active and knowing concealment of the Design and Manufacturing Defects and the Affected Components, equitable tolling of the statutes of limitations applicable to the causes of action brought in this case is appropriate.

92. Plaintiffs and Class and Subclass Members could not have reasonably discovered the true reasons for the Design and Manufacturing Defects and the Affected Components until the recent investigation that led to the filing of this Complaint.

**CLAIMS**

**Count 1**

**Breach of Express Warranties**

93. Plaintiffs incorporate by reference all paragraphs in this Complaint.

94. Chrysler and VW expressly warrantied that they would cover the cost of all parts and labor needed to repair any item on the Class Vehicles when they left the manufacturing plant that is defective in material, workmanship, or factory preparation.

95. Chrysler and VW materially breached their express warranties by manufacturing, selling, and leasing vehicles that contained the Design and Manufacturing Defects and the Affected Components, which rendered the vehicles unsafe or unfit for use as warrantied due to failing in material, workmanship, or factory preparation.

96. Chrysler and VW were put on notice of the breach by Plaintiffs' and Class

Members' efforts to get the vehicles repaired at Chrysler's and VW's authorized dealerships.

97.  As a result of Chrysler's and VW's breach of warranties, Class Members have sustained damages, including diminished value of the Class Vehicles.

98.  Chrysler's and VW's time limits on their warranties are unconscionable because Chrysler and VW knew or had reason to know that Plaintiffs and Class Members would not detect the Design and Manufacturing Defects and the Affected Components prior to the expiration of the warranty period, and that in some instances the Design and Manufacturing Defects and the Affected Components would manifest themselves after the expiration of the warranty period. By making false and misleading representations about the nature of the Design and Manufacturing Defects and the Affected Components, Chrysler and VW further prevented Class Members from timely exercising their rights under the warranties.

99.  Plaintiffs and Class Members are entitled to recover all damages as a result of Chrysler's and VW's breach of warranties in excess of $5,000,000.

**Count 2**

**Violation of the Magnuson-Moss Warranty Act**

**15 U.S.C. §2301 et sequelae**

100.   Plaintiffs incorporate by reference all paragraphs of this Complaint.

101.   Under the Magnuson-Moss Warranty Act, Class Members are "consumers,"
Chrysler and VW are "suppliers" and "warrantors," and the Class Vehicles
are "consumer products."

102.   This Court meets the jurisdictional requirements under the Class Action
Fairness Act and the Class has at least 100 plaintiffs, thus has original
jurisdiction under the Magnuson-Moss Warranty Act.

103.   Pursuant to 15 U.S.C. §2301(d)(1), the Magnuson-Moss Warranty Act
provides a cause of action for any consumer who is damaged by the failure
of a warrantor to comply with a written or implied warranty.

104.   Chrysler's and VW's implied warranty of merchantability falls within the
meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(7).

105.   Chrysler and VW breached their warranties as described in this Complaint.
Without limitation, all Class Vehicles suffer from common Design and
Manufacturing Defects and the Affected Components that manifest in the

1

2

3

faulty cylinder head and is present at the point of sale.

106.    Under the Magnuson-Moss Warranty Act, Chrysler and VW were obligated

to disclose to Class Members the known Design and Manufacturing Defects

and the Affected Components in Class Vehicles, and were obligated to

repair or otherwise remedy the Design and Manufacturing Defects and the

Affected Components.

107.    Class Members are intended third-party beneficiaries of contracts between

Chrysler and its dealers, and VW and its dealers, and specifically of

Chrysler's and VW's implied warranties. The warranty agreements were

designed for and intended to benefit consumers only.

108.    Chrysler and VW failed to meet their disclosure and remedy obligations,

despite reasonable opportunity to do so.

109.    Chrysler's and VW's violations of the Magnuson-Moss Warranty Act caused

damage to Class Members and entitles Class Members to statutory relief.

## Count 3

## Negligence

110.    Plaintiffs incorporate by reference all paragraphs in this Complaint.

111.    Chrysler and VW owed Plaintiffs and Class Members a duty of reasonable

care to properly produce the Class Vehicles' engines and components and ensure that the Class Vehicles would operate safely and properly for their intended use.

112.   Chrysler and VW breached their duties by failing to ensure that the Pentastar engines used in Class Vehicles were free from defect.

113.   Chrysler and VW also breached their duties by failing to warn Plaintiffs and Class Members that the Pentastar engines used in Class Vehicles were not free from Design and Manufacturing Defects and the Affected Components or the safety hazards caused by them.

114.   As a direct and proximate result of Chrysler's and VW's negligence, Plaintiffs and Class Members suffered damages.


**Count 4**

**Breach of Implied Warranty**

115.   Plaintiffs incorporates by reference all paragraphs in this Complaint.

116.   Chrysler and VW are merchants that sell motor vehicles. There was a warranty implied in the transactions that the Class Vehicles were in a merchantable condition when Chrysler and VW sold and Plaintiffs and Class

Members purchased the Class Vehicles.

117. Chrysler and VW made representations to Plaintiffs and Class Members that the Class Vehicles were of merchantable quality and fit for their ordinary purpose.

118. Chrysler and VW breached these implied warranties. The Class Vehicles' cylinder head failed to function properly, thus the Class Vehicles could not be safely or reliably driven.

119. Accordingly, the Class Vehicles failed to conform to Chrysler's and VW's implied warranties regarding their functionality and merchantability.

120. As a direct and proximate result of Chrysler's and VW's false and misleading representations and breach of warranties or merchantability, Plaintiffs and Class Members suffered significant damages.

**Count 5**

**Breach of Implied Warranty**

**MCA §30-2-314**

**Montana Subclass**

121. Plaintiffs incorporate by reference all paragraphs in this Complaint.

122. Chrysler is a merchant that sells motor vehicles. Pursuant to MCA §30-2-

314, there was a warranty implied by law in the transaction that the Class Vehicles were in a merchantable condition when Chrysler sold and Plaintiffs and Subclass Members purchased the Class Vehicles.

123.    Chrysler made representations to Plaintiffs and Subclass Members that the Class Vehicles were of merchantable quality and fit for their ordinary purpose.

124.    Chrysler breached these implied warranties. The Class Vehicles' cylinder head failed to function properly, thus the Class Vehicles could not be safely or reliably driven.

125.    Accordingly, the Class Vehicles failed to conform to Chrysler's implied warranty regarding their functionality and merchantability.

126.    As a direct and proximate result of Chrysler's false and misleading representations and breach of warranties or merchantability, Plaintiffs and Subclass Members suffered significant damages

**Count 6**

**Montana Consumer Protection Act**

**MCA §30-14-101 et sequelae**

**Montana Subclass**

127.  Plaintiffs incorporate by reference all paragraphs in this Complaint.

128.  The deceptive acts and practices of Chrysler in concealing the true nature
      of the Class Vehicles, as described in this Complaint, violate the Montana
      Consumer Protection Act.

129.  Chrysler represented that the Class Vehicles have characteristics, uses,
      benefits, and qualities that the Class Vehicles do not in fact have, and
      Chrysler advertised the Class Vehicles with the intent not to sell them with
      the advertised qualities. Chrysler thus was engaged in unfair and deceptive
      business practices in violation of Montana's Consumer Protection Act.

130.  As a direct and proximate result of Chrysler's conduct, Plaintiffs and
      Subclass Members have suffered injury and economic damages and are
      entitled to relief under MCA §30-14-133, including fees and treble
      damages. Moreover, those Subclass Members who are "older persons" or
      "disabled persons" are entitled to an additional award under MCA §30-14-
      144.


**WHEREFORE**, Plaintiffs demand judgment and relief against Chrysler as follows:

1.    An Order certifying this case as a Class Action;

2.      An Order appointing Plaintiffs as the Class and Subclass Representatives;

3.      An Order appointing Plaintiffs' counsel as Class Counsel.

4.      Damages and other relief under statutory or common law;

5.      Attorney's fees and costs as provided by any applicable provision of law;

6.      Pre- and post-judgment interest;

7.      Declaratory, injunctive, and equitable relief;

8.      Such other and further relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiffs, on behalf of themselves and the proposed Classes and Subclass, demand a trial by jury on all issues so triable.

DATED this 10th day of July, 2020.

/s/Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC

/s/John Heenan
HEENAN & COOK, PLLC

ATTORNEYS FOR PLAINTIFFS